FIELD *v.* LOVERIDGE.

1. DECREE — ANNUAL CHARGE ON LANDS — ACTION TO RECOVER UNPAID INSTALLMENTS—LIMITATIONS.

By a judicial decree, lands were charged with the payment of $200 a year during the life of the original grantor. The grantor died March 4, 1891. Letters of administration were granted August 11, 1893, and a bill to enforce the lien was filed by the administrator November 20, 1894, the installments being in default since 1872. 2 How. Stat. § 8722, suspends limitations, as against an administrator, until two years after the granting of letters, and section 8736 limits to 10 years the right to recover on a decree. *Held,* that complainant could recover the installments falling due within 10 years prior to the date of the grantor's death, but no others.

2. SAME—MODIFICATION ON APPEAL—COSTS.

Where a decree for complainant is modified upon appeal so as to reduce by a large sum the amount recovered, defendant is entitled to costs of the appellate court.

Appeal from Branch; Yaple, J. Submitted January 6, 1897. Decided September 14, 1897.

Bill by Sidney Field, administrator with the will annexed of the estate of Serephina A. Tucker, deceased, and Hiram A. Tucker, sole legatee under said will, against Henry C. Loveridge and Mary Ellen Allen, to enforce a lien upon land. From a decree for complainants, defendants appeal. Modified and affirmed.

*John B. Shipman,* for complainants.

*H. H. Barlow,* for defendants.

LONG, C. J. Prior to October 21, 1862, Augustus P. Tucker was the owner of 160 acres of land, which was occupied and used by him as a farm. On that day he and his wife, Serephina A. Tucker, deeded such lands to

their son Hiram, one of the complainants in this suit, and at the same time took back from Hiram a bond in the following form:

"The condition of this obligation is such that, if the said Hiram A. Tucker, his executors or administrators, does allow, permit, and protect the said Augustus P. Tucker and Serephina A. Tucker in the free, exclusive, undisturbed, quiet, and peaceable possession of the house on the premises this day sold and deeded to said Hiram A. Tucker, in the township of Coldwater, and now occupied by said Augustus P. Tucker and Serephina A. Tucker, for and during their and each of their natural lives; and if the said Hiram A. Tucker, his executors and administrators, shall at all times during the natural lives of the said Augustus P. Tucker and Serephina A. Tucker suitably support and maintain the said Augustus P. Tucker and Serephina A. Tucker, and provide them with suitable food, drink, clothes, nursing, medicine, firewood, and all other things suitable and necessary for their maintenance and support in the house above designated, and, in case such house should be destroyed, then in some other suitable house to be provided by said Hiram A. Tucker, his executors and administrators; and in case the said Augustus P. Tucker and Serephina A. Tucker, or either of them, become dissatisfied with the manner or way in which said Hiram A. Tucker supports and provides for them, or if they shall so desire, it shall be optional with them to receive, in lieu and instead of the food, drink, clothes, nursing, medicines, firewood, and other things above mentioned, the sum of $500 a year during the time above specified, viz., their natural lives, to be paid in quarter-yearly installments at the end of each quarter of a year. The said Hiram A. Tucker is to furnish and provide the said A. P. and S. A. Tucker with a horse and buggy whenever they, or either of them, shall desire and call upon the said Hiram A. Tucker for one for their own use. And if the said Hiram A. Tucker, his executors and administrators, shall also pay, or cause to be paid, to one Curtis M. Tucker, the son of said A. P. and S. A. Tucker, the sum of $1,500 in three yearly installments after the death of both of the said Augustus P. Tucker and Serephina A. Tucker,—then this obligation to be void."

This bond was secured by a mortgage upon the premises, which bears the same date, the consideration therein being $5,000, conditioned:

"That if the said party of the first part pay to said parties of the second part the sum of $5,000 according to the terms and conditions of a certain bond,  *    *    * then these presents and said bond shall cease and be null and void."

Hiram A. Tucker went into possession of the premises, and undertook to carry out the conditions of the bond until the year 1866, at which time some trouble arose between him and his parents, and on October 5, 1866, he conveyed the premises to Isaac P. Alger by deed of warranty for the consideration of $8,000. The complainants contend that, at the time this conveyance was made, nothing in fact was paid by Alger, but that he promised to perform and do all things for Augustus P. Tucker and his wife which Hiram had agreed to do under the bond which he had given to them.

Defendants claim that, when the property was deeded to Alger, it was the agreement that Hiram A. Tucker should take care of this bond and mortgage, and that $8,000 was to be paid by Alger in yearly installments of $500 each, said payments to commence when the claims of Augustus P. Tucker and wife under the bond were satisfied. Defendants further contend that, at the time the deed was made, a note for $8,000 was given by Alger to Hiram A. Tucker, but that an arrangement was made the next year between Alger and said Tucker by which Tucker surrendered the $8,000 note upon the payment to him of $100 by Alger. A receipt is contained in the record, signed by Hiram A. Tucker, reciting the payment of $100 in full of all demands up to its date. This, then, left the title of the farm in Alger, subject to the mortgage of $5,000, conditioned that the bond should in all things be performed as therein agreed. It appears, however, that, soon after the deed was made to him, suit was commenced by Augustus P. Tucker and wife against Hiram A. Tucker and Isaac P. Alger in the Branch circuit court, in chancery, to foreclose the mortgage on the farm, in which it was claimed that an election had been made

under the conditions of the bond; and on April 4, 1869, a decree was entered in the case, finding that Augustus P. Tucker and wife had elected under the bond to take the $500 per year instead of the support provided in the bond, and that the defendant Hiram A. Tucker had supported Serephina A. Tucker in the past, and that there should "be deducted from the amount due complainants on said bond and mortgage the sum of $200 per annum for the term of two years and three months last past, and that in the future the said defendants be allowed the sum of $200 per annum, or at that rate for such time, so long as they may hereafter furnish such separate support and maintenance to said Serephina A. Tucker, and which she may voluntarily accept of her own free will, to be deducted from any sum or sums of money which may hereafter grow due on said bond and mortgage." It was further decreed as follows:

"The defendants are entitled thereto and are hereby allowed as set-offs for certain judgments and debts against the complainant Augustus P. Tucker proved to have been paid or purchased by said Hiram A. Tucker. After deducting each set-off, and allowance for the separate support and maintenance of the said Serephina A. Tucker, up to and including the 6th day of April, 1869, there is due to the complainant Augustus P. Tucker on said bond and mortgage the sum of $756.50."

It was decreed that this amount should be paid, together with the costs of the proceedings, and that in default of such payment the premises might be sold. The decree further provided that complainant Augustus P. Tucker—

"Be at liberty hereafter, as conditions are broken and installments become due, if no sale be had under this decree (or a sale of only a part of the premises made) in consequence of said mortgagor paying the amount so as aforesaid ascertained to be due, with interest and costs as aforesaid, from time to time, to go before one of the commissioners of this court for Branch county on the footing of this decree, and obtain a report of the amount which the defendants shall then be liable to pay the complainant on said bond and mortgage, to the end that upon the com-

ing in and confirmation of such report the complainant may apply to this court for an order for the sale of the said premises, or a part thereof, to satisfy the amount which may then be due, with interest, and costs consequent upon such report and sale," etc.

It appears that all the sums due under the bond and mortgage and decree to Augustus P. Tucker have been fully paid by Alger and his grantees up to the time of the death of Augustus P. Tucker, which occurred on April 12, 1887. Alger also claims to have paid to Hiram A. Tucker divers sums of money, amounting to the sum of $1,000.

In the year 1869, Hiram A. Tucker went to the State of Oregon to live, taking with him his mother. She continued to live with him up to the time of her death, on the 4th day of March, 1891. After their going to Oregon, and in the year 1872, it is claimed that Alger sent them one installment of $200 to apply upon the bond and mortgage. No demand was made upon Alger or his grantees from that time until the year 1889, Serephina A. Tucker living with and being supported by her son Hiram. At her death she left a will giving to him all her property; and Sidney Field, the other complainant, is the administrator of her estate, with the will annexed. Soon after the deed from Hiram A. Tucker to Isaac P. Alger, in 1866, Alger contracted to sell the south 80 acres to Harry Baldridge for $4,000. On April 26, 1869, a deed was made to Baldridge to carry out the terms of that contract, and Baldridge gave back to Alger, on the same date, a mortgage for $3,000, which was subject to certain conditions, among which was that this mortgage was not to be paid until Tucker and his wife had signed off their interests under their mortgage, or were dead. Baldridge died in 1879, and Mary Ellen Allen, the defendant, one of his heirs, acquired all the interest which he had, and she is now the owner of it. On March 12, 1870, Alger, for the consideration of $5,000, conveyed the north 80 acres to Washington Dunton, in which deed the house reserved in

the decree in the foreclosure suit between Augustus P. Tucker and Hiram A. Tucker and Alger is reserved to Augustus P. Tucker; and, on the same day this deed was given, Dunton gave back to Alger a mortgage of $4,000, payable in four annual payments, but providing, if the interest was paid when due on said mortgage, no part of the principal was to be paid so long as Augustus P. Tucker occupied the house on said premises reserved to him, and no interest was to be paid until the claim of said Tucker had been fully paid for the time interest was due. In January, 1885, defendant Loveridge purchased the mortgage given by Harry Baldridge, as well as the one given by Dunton, and paid therefor the sum of $3,500. The Dunton mortgage on the north 80 acres was foreclosed, and the premises purchased by Loveridge on such foreclosure sale, October 26, 1891. Loveridge also acquired title through *mesne* conveyances from Dunton, and now claims to be the owner of said north 80 acres. He also still owns the Baldridge mortgage upon the south 80 acres, upon which there remains unpaid $2,000.

The claim of complainants is that under the $5,000 mortgage, and the decree in the Branch circuit court in chancery, Serephina A. Tucker was entitled to $200 a year in money, which was a charge upon the land, and that by an oral agreement made between her and her son in 1887, while they were residing in Oregon, the claim was assigned to Hiram A. Tucker, and that by her will she conveyed to him all her estate, and that thereafter Hiram had a right to be subrogated to all the rights of his mother under this mortgage and decree, to collect and receive all moneys which were due and payable to her thereunder.

Defendants' contentions are:

1. That the bond and mortgage have been fully paid; that defendants show by the record that $9,000 and upwards has been paid by Alger upon said bond and mortgage; that the mortgage was given to secure the penal bond of $5,000, and that no secret agreement made

between Hiram A. Tucker and Isaac P. Alger could in any way affect subsequent purchasers.

2. That the right to recover is barred by the statute of limitations.

3. That Hiram A. Tucker never became subrogated to any rights which Serephina A. Tucker had in the premises, and that defendants are good-faith purchasers, without notice of the claim now set up by Hiram A. Tucker.

In the proceedings which were had upon the foreclosure of the mortgage, the parties interested—that is, Hiram A. Tucker and Isaac P. Alger—had their day in court, and the decree fixed the *status* of the parties, and, not having been appealed from, the lands were held as security for the payment of the money to Mrs. Tucker; and whatever interest she had passed to her son Hiram, at least under the will, if he were not subrogated to all her interest therein by the oral agreement. Whatever may have been paid to Augustus P. Tucker could in no wise affect the rights of Mrs. Tucker in the decree. Their interests were divided by the terms of the decree. Two hundred dollars annually was to be paid to her. She was paid that amount up to the year 1872. At the entry of the decree, April 4, 1869, as stated therein, she had received $200 per year for two years and three months. If the parties were bound to the payment of the penalty of the bond of $5,000 only, the rights of the complainants are very different than they would be if the decree is to be construed as a continuing one during the lifetime of Mrs. Tucker. The decree recites that—

"In the future the said defendants [Hiram A. Tucker and Isaac P. Alger] be allowed the sum of $200 per annum, or at that rate for such time, so long as they may hereafter furnish such separate support and maintenance to said Serephina A. Tucker, and which she may voluntarily accept of her own free will, to be deducted from any sum or sums of money which may hereafter grow due on said bond and mortgage."

It was the evident intent of the court in framing the decree to give to the husband $300 per year for his sup-

port, and to his wife $200. But the decree fixes the time during which payments must be made. It is therein provided that it is to be paid during the terms of their natural lives. It appears, therefore, that the lands, at the time the title was in Isaac P. Alger, were subject to this lien in favor of Mrs. Tucker. This bill is filed to enforce the lien. The court below granted a decree in accordance with these views, but held that the computation should be made from 1872, the date of the last payment to Mrs. Tucker, up to the time of her death. In this the court was in error. The decree was payable in installments. Mrs. Tucker died March 4, 1891. The statute of limitations would be suspended at her death. 2 How. Stat. § 8722. The statute would not commence to run again until two years after letters of administration were granted. The letters were granted August 11, 1893, and the present bill was filed November 20, 1894. The statute has not run since the death of Mrs. Tucker, so that under section 8736, 2 How. Stat., the complainants would have the right to recover for all installments falling due within 10 years prior to Mrs. Tucker's death. *Snyder* v. *Hitchcock*, 94 Mich. 313; *Ludeman* v. *Hirth*, 96 Mich. 17 (35 Am. St. Rep. 588).

The decree below will be affirmed, with this modification. This would make a large deduction from the amount found due by the court below. The defendants will therefore recover the costs of this court.

The other Justices concurred.