### WHITCOMB v. DETROIT ELECTRIC RAILWAY.

Injury to Employé—Negligence—Evidence.

*1. Where it is charged as negligence that a trolley car was delivered to the plaintiff, a conductor, from the defendant's barn, in a condition unfit for use, it is incumbent upon the plaintiff to establish the negligence; and the mere fact that the trolley pole was found bent after having run a mile without giving any indications of being in an unsafe condition, is not evidence that it was in bad condition when taken from the barn.

2. The mere fact that an accident occurred is not evidence of negligence.

Error to Wayne; Carpenter, J. Submitted December 4, 1900. Decided January 29, 1901.

Case by Louis J. Whitcomb against the Detroit Electric Railway for personal injuries. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Affirmed.

Plaintiff was a conductor on one of defendant's cars in the city of Detroit on April 25, 1898. He had been in the employ of the company for several years. He operated the car on the day before until 3 o'clock p. m., and returned it to the barn in good order. Another conductor then took and ran it until 1 o'clock a. m., Monday. That conductor turned it in in good order. Plaintiff took the car at 5:50 a. m., ran about a mile down Kercheval and Mt. Elliott avenues to Mack avenue. The trolley pole there left the wire, a thing not uncommon for these poles to do, for various causes. They are then put in place by a cord hanging from the trolley pole to the rear of the car. He replaced the trolley upon the wire in the usual way,

---

* Head-notes by Grant, J.

and saw that the pole was somewhat bent. The pole left the wire several times upon the trip, and every time was replaced in the usual manner. There appeared to be no difficulty in making that trip, of about 11 miles, and he arrived in front of the barn without having lost any time. He testified that one Coffee, a car inspector, and others were standing in front of the barn. He stopped on the outside track, and while standing on the car platform called the attention of those standing in front of the barn to the pole. Told them he would like a new car; that he had had trouble with the pole. He testified, further, that some one told him to go to Belle Isle bridge and back again. He then started with his car to make the trip. He went down Concord street to Champlain street; thence to Field avenue and Jefferson. At Field avenue the pole gave a sudden jerk, and left the wire. He then saw that the pole was twisted in such shape that the wheel would not stick to the wire at all, and that he could not replace it by the cord. He then went up on the car, took hold of the trolley pole, had it under his arm, and attempted to straighten it. He could not, and held the pole with his hands to the wire, and started for the barn. In making the curve at the corner of Field and Jefferson avenues, the pole and base by which it was fastened to the top of the car gave way. He was thrown from the car, the pole following, and falling upon him. A car immediately following pushed plaintiff's car into the barn. The trolley pole was 14 feet long, of wrought-iron pipe, tapering slightly at its base, and fitted into a socket of the trolley stand, which was fastened securely to the top of the car. The trolley stand swung on a pivot, so as to adjust the wheel to the curves of the track. The socket holding the trolley pole was cup-shaped, constructed with clamp screws at its sides to tighten or loosen it to the tapering end of the trolley pole. These clamp screw heads were found on the top of the car, showing fresh breaks. He charges that his injury was the result of defendant's negligence. The negligence charged in the declaration is that the de-

fendant delivered to him the car in an unsafe condition, in that the trolley pole was in a bent and crooked condition, loose at the base, and incapable of running along the overhead wire. The court directed a verdict for the defendant.

*D. Augustus Straker*, for appellant.

*T. T. Leete, Jr.*, for appellee.

GRANT, J. (*after stating the facts*). 1. The car was properly equipped with the best appliances. It was in good condition when operated by the plaintiff on the day before, and when he returned it to the barn. It was in good condition when plaintiff's fellow-servant, the next conductor, took it, ran it the usual time, and returned it. Plaintiff received it at 5:50, and discovered no defect in it until the trolley pole left the wire at the crossing of another track at Mack avenue. In plaintiff's judgment, it was not then in a dangerous condition, and he ran it for about 10 miles farther, safely and without much difficulty. The defendant had performed its duty in providing a well-equipped car. No showing is made that the system of inspection is insufficient, nor is it claimed that competent inspectors were not provided. The theory of the declaration is that this trolley pole was injured in the barn of defendant between 1 o'clock and 5:50. The sole testimony which the learned counsel claims tends to support this theory is that the trolley pole, after having run a mile, left the wire, and was then found to be bent. To sustain this theory, it should appear that the pole was not bent at the time it left the wire, or while running from the barn to the place where the defect was first discovered. The bending of trolley poles is caused by the poles' leaving the wire, and then catching in some obstruction. It is thus described by one of the witnesses:

"It sometimes twists in the socket if these bolts are not clamped very tight, because it pulls straight on it. The twist bends are usually made on straight tracks, but on a

curve the trolley is more apt to be pulled from the base than it is in a straight wire. When a trolley wheel slips from the wire, the pole stands up vertical, and then, if it comes in contact with a span wire, it gets a bend or twist, and the faster the speed the worse the bend."

Under all the testimony, this could have been done at the very time the defect was discovered. There is nothing in the record to justify the inference that it was done while in the barn. If, therefore, a verdict were permitted, it would rest upon pure speculation. The mere fact that the pole was found bent after it left the wire is no evidence that the injury to the pole occurred in the barn. The natural inference is that it bent at the time it left the wire. It follows that no negligence of the defendant was shown.

2. The main contention on behalf of the plaintiff now is that the defendant failed to properly inspect the car before it left the barn. The failure to inspect is not declared upon, and therefore cannot be any ground for recovery. The pleadings are not such as to justify a consideration of this matter. We therefore express no opinion upon the question of whether plaintiff and the inspectors were fellow-servants.

3. It is unnecessary to determine the question of contributory negligence of the plaintiff in standing upon the top of the car and attempting to hold the trolley pole against the wire. It is not claimed that there is any rule of the company to require its conductors to engage in an operation so extremely dangerous. The sole claim upon which plaintiff attempts to avoid his contributory negligence in such a dangerous undertaking is that the custom of conductors to do so was so frequent and notorious as to fasten upon the defendant its sanction of such method, and a liability if an accident follows. The testimony on the part of the defendant, and also on the part of some of the witnesses for the plaintiff, is that the usual and safe way is for the following car to push the disabled car to the barn. It is manifest that the plaintiff was thrown when the car made the curve, and that the pole was torn

from its socket at that time, and he fell, taking the pole with him.   One of plaintiff's witnesses, who saw the accident, testified that "just as he struck the curve he seemed to be pitched to the ground, and came down with the pole. When the front wheel struck the curve, the car got a little jerk, and he came down off the top."   The turning of the car naturally tended to throw the plaintiff.   The force with which he was thrown would depend upon the speed of the car.   The sudden jolt given a car when it reaches a curve is common knowledge.   A rule requiring such conduct would shock the common sense of the average man. The evidence must be very clear which would make the defendant responsible for such a dangerous method.   If conductors are in the habit of so doing, a rule against it would be very proper for such companies to adopt.

The judgment is affirmed.

The other Justices concurred.