ELSEY *v.* J. L. HUDSON CO.

1. NEGLIGENCE—LICENSEE—EVIDENCE—ELEVATORS.

Evidence that plaintiff, who was lawfully in the store of defendant, entered its elevator to be carried up, when it dropped about four feet, causing a passenger on the point of entering to fall against and injure plaintiff, who was unable to produce any testimony to establish the cause of the accident except proof of a statement by defendant that the car fell because some one jostled the arm of the operator, and made the machine descend, was not sufficient proof of a negligent cause to require the court to take the verdict of the jury.[1]

2. SAME—RES IPSA LOQUITUR—PRESUMPTIONS.

No presumption of negligence arose by reason of the mere falling of the elevator; proof of negligent conduct of the proprietor was necessary to raise an issue for the jury.[2]

[1] On liability for injury to elevator passenger see notes in 25 L. R. A. 33, 2 L. R. A. (N. S.) 744, L. R. A. 1915E, 722,

As to presumption of negligence from injury to passenger on elevator, see notes in 13 L. R. A. (N. S.) 619, 29 L. R. A. (N. S.) 816.

[2] On storekeeper's liability to customer for injury by defective elevator, see note in 21 L. R. A. (N. S.) 461.

Error to Wayne; Shepherd, J., presiding. Submitted October 6, 1915. (Docket No. 16.) Decided December 21, 1915.

Case by Elizabeth E. Elsey against the J. L. Hudson Company for personal injuries. Judgment for defendant. Plaintiff brings error. Affirmed.

*Thomas A. E. Weadock,* for appellant.

*Douglas, Eaman & Barbour,* for appellee.

STONE, J. This is an action on the case for damages occasioned by the alleged negligent drop of an elevator in the store of defendant, causing injury to the plaintiff. On Saturday, November 30, 1912, the plaintiff, while upon a shopping tour, entered the defendant's elevator on the main or ground floor of the defendant's store in the city of Detroit. She desired to go up. The elevator had come from the basement, was even with the store floor, and the conductor or operator announced that it was going up. This elevator was of the Otis plunger type, operated by hydraulic power. It was capable of carrying 30 persons comfortably, and at the time of the accident there were 10 or more people in the car. The plaintiff had been a frequent customer at the store, and she entered the elevator without mishap and was awaiting the lifting of the elevator. While the elevator conductor stood in his proper place, holding the controller as usual, the elevator dropped about four feet. The drop of the elevator caused a large woman, who was entering at that instant, to fall and strike the plaintiff on the head, resulting in the injuries complained of.

There were two counts in the declaration. In the first count, after stating the duty of the defendant, it was alleged that:

It "did not use due and proper care to provide and maintain reasonably safe and suitable machinery, wires, cables, ropes, pulleys, and other appliances for the operation of said elevator, as aforesaid; that is to say, the ropes, cables, and pulleys then used by said defendant in the operation of said elevator were old, worn out, and rotten, and were wholly unsafe, unfit, and unsuitable for the operation of said elevator, and the operator in charge thereof was an incompetent boy."

In the second count, after alleging the duty of the defendant, the following allegation appears:

"Yet the said defendant, disregarding its said duties, did not maintain said elevator in a reasonably safe condition for use, and did not employ a competent operator, and did overcrowd and overload the same, and did not have the machinery, levers, brakes, safety catches, and other machinery and appliances connected with said elevator and a part thereof in a reasonably safe condition, and did not properly care for passengers in said elevator, nor guard them from danger, and did not have a competent person in charge of said elevator to start and stop the same, so that passengers might be safely carried therein, and safely enter and leave the same, nor did it have a competent superintendent, or starter, to regulate the proper number of passengers allowed to enter said elevator at any one time, and especially at the time said plaintiff was a passenger therein, and did not have said elevator suitably, and frequently inspected by competent inspectors, and did not have the same inspected by the superintendent of public buildings of Detroit, and did not report to said department a full account and description of said elevator and the date of its installation within 90 days after July 12, 1912, and did not have said elevator equipped with proper brakes and safety catches, nor did it immediately report said accident of November 30, 1912, to said department of public buildings, nor did it ever make the full report required by"

—an ordinance of said city approved June 12, 1912. It was further alleged that the plaintiff's injury could

only have been caused by the failure and negligence of said defendant to have a proper elevator in reasonably safe condition, run by a competent operator, and that the occurrence of said accident, in and of itself, showed defendant's negligence.

At the close of plaintiff's case, the trial court, on motion of the defendant, directed the jury to return a verdict for the defendant, upon the ground that there was no evidence of any negligence of the defendant, and that the plaintiff had not presented such a case as entitled her to a verdict. A verdict and judgment for the defendant followed.

There was a motion for a new trial upon the following grounds:

(1) Because the court erred in directing a verdict for the defendant.

(2) Because the court erred in following a rule of decision in this State, that negligence could not be presumed from the happening of an accident, instead of following the exception to that rule, that in a case like this negligence might be presumed from the happening of the accident, and it was not the duty of the plaintiff to point out exactly how the accident occurred.

(3) Because the court erred in refusing a continuance of the case from November 19th in the afternoon to November 20th in the morning, in order to obtain the testimony of the defendant's servant who operated the elevator at the time of the accident.

(4) Because it was a question of fact for the jury whether defendant was guilty of negligence.

After a careful reading of all of the evidence in the case, we are constrained to hold that no cause was shown why the elevator dropped. All of the witnesses to the accident, who testified, stated that they did not know what caused the elevator to descend. The plaintiff's daughter, who was present, testified that the conductor did not start it. There was no evidence tending to show a probable reason for the falling of the elevator. The man who acted as the starter of the eleva-

tor, and who was directly in front of and in charge of
the elevator, testified that such a drop might be caused
by the breaking of the pin of the neutral control, or by
the absence of a spring, or by lowering of the water
pressure. He further testified that the elevator con-
ductor was at his proper place and was attentive. He
testified:

"I saw the elevator drop, but I don't know why it
dropped. The man was there at his work. Every Fri-
day we have the elevators inspected."

From aught that appears from the evidence, the ele-
vator was in first-class condition, and there was no evi-
dence that there had been any previous trouble with
it. There was no evidence tending to show that the
conductor or operator was incompetent, or that proper
care and the usual precautions were wanting.

Against the objection of defendant, a copy of a re-
port made by the defendant to the office of the inspec-
tor of buildings of the city of Detroit was put in evi-
dence. This report stated:

"Some one jostled the arm of the elevator conductor,
in which he held the lever of the car. This caused the
lever to shove over, so that the car descended."

Upon the hearing of the motion for a new trial the
plaintiff was permitted to place upon the stand, and
examine orally, the elevator conductor. In his reasons
for denying the motion the learned trial judge referred
to such testimony. He said:

"There was no showing of what caused the elevator
to drop, at the trial, except a statement made by the J.
L. Hudson Company to the elevator inspector. On the
motion for a new trial, the conductor of the elevator
was sworn and examined by the attorney for the plain-
tiff, and explained that the dropping of the elevator
was due to the fact that one of the passengers struck
his shoulder, causing him to fall back far enough to
move the lever, which let the car drop a short distance,

and that he immediately brought the car back to place.

"A verdict was directed for the defendant at the close ·of the plaintiff's case, for the reason that in the opinion of the court no evidence of negligence on the part of the defendant was produced; it being the opinion of the court that in this State it is necessary for the plaintiff to show something more than the mere happening of the accident.

"A motion for a new trial was filed, and the court allowed the testimony of the elevator conductor to complete the record, at the request of the attorney for the plaintiff. No new authorities were cited in arguing the motion for a new trial, and the parol testimony did not in any way tend to establish negligence, or raise any issues of fact for a jury. On the contrary, it tended to show that the injury resulted from the accidental jostling of the conductor's arm by a passenger of the elevator, so that the record, as it stands today, is absolutely free from any evidence of negligence on the part of the defendant. Attorney for plaintiff claims that a new trial should be granted for the reason that the elevator was overcrowded, but the testimony of the plaintiff and her daughter both controvert this position, as well as the testimony of the elevator conductor, who stated that there was room for four or five more passengers in the car.

"There is no evidence before the court of any defective, broken, old, or worn machinery, and there is no evidence that the elevators were out of order and not properly inspected; and, further, there is no evidence that ordinary care was not used by the defendant in this instance in the running of its elevators, and under the decisions in this State, especially the case of *Burgess* v. *Stowe,* 134 Mich. 204 (96 N. W. 29), it is expressly held that the owner of an elevator is only required to use the care of an ordinarily prudent person under the circumstances.

"Taking the testimony of the plaintiff in the case, and giving it the most favorable consideration, it shows that the elevator dropped three or four feet without any reason apparent to the plaintiff. Suppose the ·case had stopped here, and there had been no explanation as to why the elevator dropped. It seems to the court that under the decisions in this State it would be nec-

essary for the court to direct a verdict as it did, and the court has been offered no reason to overcome this belief which would warrant the granting of a new trial.

"In the case of *Hall* v. *Murdock,* 114 Mich. 223 (72 N. W. 150), the court says:

"'We think there was evidence sufficient to submit the case to the jury whether the cable had become old and worn, and parted in consequence. The mere fact that it broke, under the decisions of this court, was no evidence of negligence.'

"In the case of *Mirabile* v. *Simon J. Murphy Co.,* 169 Mich. 522 (135 N. W. 299), the Supreme Court of this State has passed on the question squarely. The plaintiff in that case proceeded on the theory that it was only necessary to show that the elevator dropped. He said:

"'When the plaintiff proved that the elevator dropped while she was alighting therefrom, her negligence in no way contributing thereto, she made out a *prima facie* case, establishing the negligence of the appellant.'

"The court, however, did not take this view, and Justice BLAIR said:

"'The weight of authority seems to be in favor of this proposition, * * * but such is not the rule in this State.'

—citing a number of cases sustaining this view."

The motion being denied, exception was duly taken, and the plaintiff has brought the case here for review, assigning many errors.

In his brief counsel for appellant says:

"Plaintiff was entirely blameless. She was in the elevator at the invitation of the defendant, and the accident could not have happened, unless it was guilty of negligence. The assignments of error have been referred to in the statement, showing how the questions arose. The last two assignments of error, however, viz., the direction of a verdict for defendant, and a refusal to grant a new trial, cover the case."

It is urged by appellant's counsel that the trial court erred in its construction of the *Murphy Case,* and he

places much stress on the language of Justice BLAIR, where he said:

"Where, however, the facts and circumstances surrounding an injury are such as to justify an inference of negligence, no further proof of negligence is required."

We find nothing in the facts of the instant case making applicable the language here quoted. We find nothing to justify an inference of negligence. We think that the reasoning of the trial judge, above quoted, fully justified him in denying the motion for a new trial, and in directing a verdict.

The rule is well settled in this State that the mere fact that an accident happens, is no evidence of negligence. We cite the following cases: *Toomey* v. *Iron & Steel Works,* 89 Mich. 249 (50 N. W. 850) ; *Robinson* v. *Wright & Co.,* 94 Mich. 283 (53 N. W. 938) ; *Peppett* v. *Railroad Co.,* 119 Mich. 640 (78 N. W. 900) ; *Whitcomb* v. *Railway,* 125 Mich. 572 (84 N. W. 1072) ; *Casterton* v. *Blower Co.,* 142 Mich. 407 (106 N. W. 61) ; *Brown* v. *Bryant,* 166 Mich. 180-183 (131 N. W. 577) ; *Fifelski* v. *Gas Light Co.,* 181 Mich. 503 (148 N. W. 195). We are of opinion that it cannot be held that the pushing or jostling of the conductor by a third person constituted negligence either of the conductor or the defendant. In the *Robinson Case* it was held that even the sudden breaking or giving way of a piece of machinery, properly constructed, was not sufficient to justify the conclusion of negligence. The rule which this court has applied is a reasonable one. In the *Casterton Case* it was said:

"We have many cases which hold that where a machine has worked well up to the time of the accident, and the occasion is unexpected and unexplained, a charge of negligence is not sustained. These cases are not necessarily applicable to a case where the machine has previously shown symptoms of inefficiency or dan-

gerous irregularity in its operation, for with such warnings it may be the duty of the proprietor to ascertain and remedy the tendency."

We have examined the numerous Michigan cases cited by appellant's counsel in support of his contention. In many of them, like *La Fernier* v. *Lighter & Wrecking Co.,* 129 Mich. 596 (89 N. W. 353), and *Lincoln* v. *Railway Co.,* 179 Mich. 189 (146 N. W. 405, 51 L. R. A. [N. S.] 710), there was evidence tending to show negligence, and we held that, although negligence will not be presumed from the mere fact of an accident, yet such fact may be taken into consideration, in connection with all the other facts and circumstances, in determining whether negligence existed. In another class of cases like *Barnowsky* v. *Helson,* 89 Mich. 523 (50 N. W. 989, 15 L. R. A. 33), it has been held that negligence might be inferred from the circumstances. In the case of the falling roof there was also evidence that it was not properly braced, and the facts were so simple that a majority of the court held that the presumption was almost conclusive that the roof fell because it was not sufficiently braced or stayed. These cases are readily distinguished from the instant case.

We deem it unnecessary to discuss the other assignments of error, for the reason that the verdict rendered was the only one that can be justified.

The judgment of the circuit court is affirmed.

BROOKE, C. J., and PERSON, KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.