HEPPENSTALL STEEL CO. v. WABASH RAILWAY CO.

1. NEGLIGENCE—CIRCUMSTANTIAL EVIDENCE—RES IPSA LOQUITUR.

The holding of the Supreme Court that cases may be made by circumstantial evidence is not the adoption of the rule *res ipsa loquitur*, which is not favored by this court.

2. SAME—EVIDENCE—PERMISSIBLE TO ALLOW JURY TO DRAW LEGITIMATE INFERENCES FROM ESTABLISHED FACTS.

The jury should be permitted to draw legitimate inferences from the established facts, and so to do is not to permit them to speculate or guess what the facts are.

3. SAME—RAILROADS—CIRCUMSTANTIAL EVIDENCE — LIABILITY FOR WANTON ACTS ALTHOUGH RELEASED FROM ORDINARY NEGLIGENCE.

In an action for damages to plaintiff's building, alleged to have been caused by the wilful and wanton acts of defendant's agents in so operating their switch engine as to allow three freight cars to crash through the steel door opening into plaintiff's plant and demolish a portion of the wall at the other end, where defendants were released

[1]Negligence, 29 Cyc. p. 592; [2]Evidence, 23 C. J. § 1797; [3]Negligence, 29 Cyc. p. 622.

from ordinary negligence by the agreement under which the side track leading into plaintiff's plant was constructed and operated, evidence *held*, sufficient to take the case to the jury and to warrant the inference that there was such wanton disregard of plaintiff's rights as to render defendants liable, although the case was made entirely by circumstantial evidence (following *E. B. Muller & Co.* v. *Hines*, 216 Mich. 664). CLARK and McDONALD, JJ., dissenting.

Error to Wayne; Hunt (Ormond F.), J.  Submitted June 8, 1927.  (Docket No. 34.)  Resubmitted March 27, 1928.  Decided June 4, 1928.

Case by the Heppenstall Steel Company against the Wabash Railway Company and the Pere Marquette Railway Company for damage to plaintiff's building. Judgment for plaintiff.  Defendants bring error. Affirmed.

*Beaumont, Smith & Harris,* for appellant Wabash Railway Co.

*W. K. Williams* and *J. C. Kauffman,* for appellant Pere Marquette Railway Co.

*Robert J. Hanley* (*Frank W. Atkinson,* of counsel), for appellee.

Plaintiff operates a steel plant adjacent to defendant's switching yards in Detroit.  A spur track extended from defendants' switching tracks to and into plaintiff's plant.  The opening for the cars to enter plaintiff's building was protected by a steel curtain. Some time before midnight on July 14, 1920, three cars, two loaded and one empty, crashed through the steel curtain, entered plaintiff's building, and went through it and demolished a portion of the east wall. No witness saw the happening.  A lady living 75 or

80 feet away heard the crash and went over to view it. She testified:

"I live at 102 Minnie street in the city of Detroit. That is up near the Heppenstall Steel plant. My home is just about 75 or 80 feet from the Heppenstall plant. It is across Minnie street. I am on the north side and the Heppenstall plant is on the south side. I was living there on July 14, 1920, and I remember some cars crashing through the doors of the Heppenstall Steel Company on the night of July 14, 1920. I recollect it happened between 9:30 and 11 o'clock. I was in my home at the time the crash attracted my attention to the accident. I got out of bed and slipped on a kimona and put on a pair of slippers and went out on the porch. I stood on the porch and saw it was the building across the street that got crashed. I saw the front door all demolished. I went over across the street and looked in the building and I saw there was three cars in the building, an oil car, one coal car, and an empty car. The empty car had gone right through the east end of the building. I went into the building but I did not walk all the way through. I went as far as possible, which was just inside the door. There were no lights in the building but the electric light on my corner shows in the plant and I could see bright as day. It shines right across the road. You could see; and the light on the boulevard also shines in the back. There was no opening in the back so as to let in any light from the boulevard except the windows. I was able to see the forms of three cars. There was no one there besides myself. Before I left a gentleman came there. I expect he may have been a railroad man; he had a lantern.

"I saw some other cars attached to an engine. There were two flat cars and they were a short distance on the other side of the road; across the right-of-way; across Minnie street. They were just a little bit away from Minnie street. The engine and flat cars stayed a short time. I do not know anything more about the accident."

The siding entered plaintiff's building through an opening which at night was closed by a steel door or curtain operated like a roll-top desk; the track ex-

tended about 130 feet in the building and there was a ·double bumper about 8 feet from the end.   Plaintiff's manager testified:

"I got to the factory about a quarter after 8 the next morning, which was about my usual time.   When I got there I found that the door had been broken through; entirely demolished, and three cars inside the building, one of them projecting out the east end of the building, perhaps 8 or 10 feet.   The brick wall at the east end of the building was entirely· broken through.   The roll door was entirely demolished; all tore up and through the plant.   One car· projected about 10 feet out through the building at the east end. There were three cars; one out and two inside. *  *  *  There was a bumper at the east end of the building, about six or eight feet from the end of the building.   The next morning the car was right up over it.   There were two bumpers, each about 16 or 18 inches high.   The idea was if a car should bump over it the truck would fall down between it and the next one.   It was made like a square, with enough distance between so the wheels would fall down between the first bumper and the second bumper.   They were about 30 or 40 inches apart; far enough apart so that the wheels of a car that went over the first bumper would go in between that and the next one. The car that projected out of the east end of the building had gone over both bumpers.   Part of the car was resting on the bumper."

It was established by proof and conceded that defendants did the switching on these tracks.

The defendants moved for a directed verdict, insisting in the court below and here that the plaintiff's case rests solely on speculation and conjecture, and, inasmuch as this court has not adopted the rule *res ipsa loquitur*, it is urged no case was made for the jury.   The trial judge submitted the case to the jury in a charge based on the theory of the case of *E. B. Muller & Co.* v. *Hines*, 216 Mich. 664, and plaintiff had verdict and judgment.   The sole question before this

court is whether plaintiff was entitled to take the judgment of the jury.

FELLOWS, J. (*after stating the facts*).   This court has uniformly held that cases may be made by circumstantial evidence.   This is not the adoption of the rule *res ipsa loquitur*, a rule not favored by this court.   It has always been the rule of this jurisdiction that the jury should be permitted to draw legitimate inferences from the established facts.   So to do is an entirely different thing than to permit the jury to speculate or guess what the facts are.   In the instant case the plaintiff's proofs presented the following established facts for the consideration of the jury: (*a*) That a railway track extended from defendants' switching yard to and into plaintiff's building; (*b*) that the three cars entered plaintiff's building on this track; (*c*) that the cars could not have pushed their way onto plaintiff's spur track through a steel curtain into and through the factory and destroyed a brick wall at the further end unless there were some adequate force behind them; (*d*) the fact that an adequate force (a live switch engine) with three cars stood close by on the same track on which the three cars entered the building; (*e*) that the switch engine and yards belonged to defendants and was being operated by their employees.

Plaintiff's declaration counted on the wilful and wanton acts of defendants' agents, upon so-called gross negligence (but see *Gibbard* v. *Cursan*, 225 Mich. 311). It was a legitimate inference to be drawn from the established facts that defendants' employees sent the cars into this siding with such force that they crashed through a steel curtain, over two high bumpers near the end of 130 feet of track running through the building and through a brick wall.   If they did so I think such agents of defendants acted in wanton disregard of the rights of plaintiff and that on the author-

ity of *E. B. Muller & Co.* v. *Hines, supra,* plaintiff here made a case for the jury.

I think the judgment should be affirmed.

FEAD, C. J., and NORTH, WIEST, POTTER, and SHARPE, JJ., concurred with FELLOWS, J.

CLARK, J. (*dissenting*). I do not concur in affirming judgment for plaintiff.

South of defendants' east-bound main line is a side track which crosses Minnie avenue and terminates in plaintiff's plant east of the street. Nearly half way between Minnie avenue and the next street west, Swain avenue, a spur track runs southwesterly from the side track, and near the latter street another branch or spur in the same direction. The side track runs into plaintiff's plant on a slight down grade, the degree of grade not being shown. The witness testified:

"There is a slight down grade to the east. I don't know whether there would be enough grade for a car to run down there of its own momentum or not. I do not know the degree of grade, whether it is one per cent. or ten."

The only witness testifying of the accident itself lived on the east side of Minnie avenue nearly across the tracks from plaintiff's plant. She was sleeping and was awakened by the car crashing through the westerly door of plaintiff's plant. She also heard the crash when the cars reached the easterly end of the plant. She arose, put on a kimona and slippers, went downstairs and out on her front porch, where she stood about five minutes, then went across the street to plaintiff's plant, when she saw an engine and two cars standing on the side track just west of Minnie avenue. She testified:

"I first noticed this engine and two flat cars across Minnie street when I went out to go over to the building, and before I went into the building."

A trainman carrying a lantern came to the plant while she was there.    Defendants put in no evidence. Plaintiff did not call any of the trainmen, yardmen, or enginemen.

The theory of the case for plaintiff as presented is that while the side track agreement between the parties saves defendants from liability for negligence they may be held liable for gross or wanton or reckless negligence, so-called, following *E. B. Muller & Co.* v. *Hines,* 216 Mich. 664.    It was there held upon direct evidence of what actually happened that defendant might be found to have been guilty of recklessness and wantonness, and recovery was permitted.

It is settled law of this State that the mere fact that an accident has happened is no evidence of negligence. *Elsey* v. *J. L. Hudson Co.,* 189 Mich. 135 (L. R. A. 1916B, 1284).    In *Burghardt* v. *Railway,* 206 Mich. 545 (5 A. L. R. 1333), it was said:

"This court has not adopted the rule *res ipsa loquitur;* we have uniformly held that the happening of the accident alone is not evidence of negligence; and we have as uniformly held that negligence may be established by circumstantial evidence, and that where the circumstances are such as to take the case out of the realm of conjecture and within the field of legitimate inferences from established facts that at least a *prima facie* case is made."

And in *Howe* v. *Railroad Co.,* 236 Mich. 577:

"That there was no eyewitness to the accident does not always prevent the making of a possible issue of fact for the jury.    But the burden of establishing proximate cause, as well as that of negligence, always rests upon the complaining party, and no presumption of it is created by the mere fact of an accident."

There is no direct evidence of negligence.    The circumstances from which it is argued negligence may be inferred are said to be:

"(*a*) That a railway track extended from defendants' switching yard to and into plaintiff's building.

"(*b*) That the three cars entered plaintiff's building on this track.

"(*c*) That the cars could not have pushed their way on to plaintiff's spur track through a steel curtain into and through the factory and destroyed a brick wall at the further end unless there were some adequate force behind them.

"(*d*) The fact that an adequate force (a live switch engine) with three cars stood close by on the same track on which the three cars entered the building.

"(*e*) That the switch engine and yards belonged to defendants and was being operated by their employees."

With respect to (*c*) the force might perhaps have been gravity, the track was down-grade, how much is not shown. And if the force was an engine, was it used negligently?

Relative to (*d*) there is testimony that an engine and two cars stood near on the side track several minutes after the accident. Where they were at the moment of impact the record does not disclose.

A like, and in some instances a stronger, showing of circumstances could be set up from cases in which it has been held that there was no evidence of negligence. See *Elsey* v. *J. L. Hudson Co., supra,* and cases cited.

The accident in this case at bar might have been caused by defendants' negligence, and it might have been caused by some mishap or misfortune for which defendants are not liable. What did cause it? The record does not disclose. The verdict rests on conjecture and ought not to stand. The rule of the *Howe Case* is applicable. We quote from it again:

"Something more should be offered the jury than a situation which, by ingenious interpretation, suggests the mere possibility of defendants' negligence being the cause of the injury."

It follows that a finding that the damage was caused by recklessness or wantonness, in legal effect by wilfulness, cannot be sustained.

Judgment should be reversed, with costs to appellants, and a new trial granted.

McDONALD, J., concurred with CLARK, J.