**LAXTON v. HATZEL & BUEHLER, Inc.**

No. 9712.

Circuit Court of Appeals, Sixth Circuit.

June 5, 1944.

Buell Doelle, of Detroit, Mich. (Buell Doelle and Doelle, Starkey & Jones, all of Detroit, Mich., on the brief), for appellant.

Leroy Vandeveer, of Detroit, Mich. (Vandeveer & Haggerty and Fred L. Vandeveer, all of Detroit, Mich., on the brief), for appellee.

Before HICKS, ALLEN, and HAMILTON, Circuit Judges.

HICKS, Circuit Judge.

Action for damages for personal injuries. Appeal by plaintiff from a directed verdict for defendant at the close of plaintiff's evidence. The sole question is, whether appellee's motion for a directed verdict should have been denied.

Appellant was a "plant protection patrolman" at the Mt. Hope plant of the Nash-Kelvinator Corporation at Lansing, Mich. (herein called Nash). Shortly after he went on duty at midnight, on April 16, 1942, he was struck on the head and severely injured by a falling exterior floodlight fixture weighing 37½ pounds. The fixture fell about 50 feet from the point where it was attached to the west wall of building 57.

This building and several others of the plant were being rehabilitated for propeller manufacture, and on November 18, 1941, Nash, as lessee, entered into a contract with appellee, Hatzel & Buehler, Inc., for certain electrical installation work, including the mounting of a series of lamps of the wall-bracket type on the outside of the buildings near the roof line. The lamp, designated by the architect, was known as a Hollophane fixture and was used with a Thompson hanger; and could be lowered in event of bulb failure or other trouble. Chapman, Staff Engineer of Nash, testified that he relied upon the architect's selection and was satisfied that reputable materials were used. Drury, a graduate electrical engineer, specializing in lighting installation, testified that the Thompson hanger was the best obtainable where it was desired to hang a lighting fixture at a high level, and at the same time retain ready accessibility for maintenance purposes.

Appellant concedes that it was an excellent hanger.

The assembly consisted of a fixed bracket attached to the wall of the building at the desired elevation. The bracket bore a housing unit into which the lamp fixture fitted. The lamp was raised into place by a service chain which was attached at one end to the fixture and was threaded through a tube-like part of the housing and over a pulley on the supporting hanger and thence down through a conduit to a "lock-box" near the ground wherein the other end might be fastened. Maintenance men could lower the lamp by attaching an extra chain to a ring in the lock-box end of the chain, disengaging the fastening mechanism, and letting the extra length of the chain run up through the conduit.

The fastening mechanism, which secured the lamp in the housing, was two-fold. It consisted first, of a flying ratchet or latch-dog on the stem of the fixture, which engaged a notch in the housing in a manner similar to the operation of an ordinary window shade. As the lamp was pulled upward into the housing, the latch-dog slid past the notch and engaged it as the lamp was slowly lowered. To disengage it, the lamp was raised slowly and dropped quickly past the notch before the latch-dog could come into engagement. There was testimony that if the operator were not careful, or if some foreign matter got into the mechanism, so that the latch-dog did not thoroughly engage, the parts might subsequently become separated through vibration and the lamp would fall. Appellant, however, asserted no negligence in connection with the latch-dog mechanism.

As an added safeguard, the lock-box end of the chain was provided with a ring which could be fitted over a hook in the box. As long as the ring was over the hook, the lamp was secure against falling, even though the latch-dog worked loose from the notch. The lamp might drop until the slack was taken up in the chain but it would not fall. To secure the ring on the hook the cover of the box was designed to fit flush against the end of the hook so that when the ring was in place and the cover closed the ring could not become dislodged without outside intervention. The cover fitted tightly and could be padlocked but it was not padlocked at the time of the accident and there was nothing in

appellee's contract with Nash that required it to provide padlocks.

One of appellant's duties on the night of the accident was to patrol alongside building 57. He was instructed by Sergeant Hicks, his immediate superior, to examine the territory for marauders and saboteurs. The basement of the building was below ground level and window wells were constructed to furnish light thereto. It was the duty of the patrolman to examine these window wells as possible places for concealment of bombs, saboteur's tools, etc. Appellant was so seriously injured that he was never able to give an intelligent account of how the accident happened; but the shattered lamp found at the bottom of the window well, the wounds on the left side of appellant's head and the trail of blood from the well, clearly indicated that, at the time he was struck, he was leaning over and making an inspection of one of these wells. The chain, unbroken and intact, was found lying by the lamp. The falling lamp had evidently pulled it entirely through the conduit. Witnesses testified that almost immediately after the accident the lock-box was found closed and sealed with a short piece of insulated electric wire, which had been passed through an eyelet and twisted.

The lamps were installed by appellee approximately two months before the accident but the work was not approved by the architect until two months after the accident. Appellee performed the maintenance work on the lamps until they were accepted but there was no evidence that the lamp which fell had either required or received any attention from appellee after its installation. The lamps were used by Nash from the time they were installed and were turned on by its employees from a central switch in the plant protection office.

From the physical fact that the box cover was found closed immediately after the accident, and in that position would have held the ring on the hook, there is a clear and almost compelling inference that the lamp fell because the ring was off the hook. But there was no evidence whatever that the ring was left off the hook at the time of installation or that it had been removed thereafter by any agent or servant of appellee. There is no evidence of lack of inspection of the equipment at reasonable intervals by appellee and no evidence that the ring had been off the hook for any reasonably discoverable period of time prior to the accident.

Such, in its material aspects, is the record, and Michigan law must control decision. We do not feel required to discuss and analyze the large number of Michigan cases cited in the briefs, for there is nothing doubtful or confusing in the applicable principles. It will suffice to quote from Burghardt v. Detroit United Ry., 206 Mich. 545, 546, 173 N.W. 360, 361, 5 A.L.R. 1333:

"This court has not adopted the rule res ipsa loquitur. We have uniformly held that the happening of the accident alone is not evidence of negligence; and we have as uniformly held that negligence may be established by circumstantial evidence, and that, *where the circumstances are such as to take the case out of the realm of conjecture and within the field of legitimate inferences from established facts, at least a prima facie case is made:* Alpern v. Churchill, 53 Mich. 607, 19 N.W. 549; Barnowsky v. Helson, 89 Mich. 523, 50 N. W. 989, 15 L.R.A. 33; LaFernier v. Soo River Wrecking Co., 129 Mich. 596, 89 N.W. 353; Stowell v. Standard Oil Co., 139 Mich. 18, 102 N.W. 227; Elsey v. J. L. Hudson Co., 189 Mich. 135, 155 N.W. 377, L.R.A.1916B, 1284; O'Donnell v. Lange, 162 Mich. 654, 127 N.W. 691, Ann. Cas.1912A, 847; Harris v. Royal Oak Savings Bank, 187 Mich. 407, 153 N.W. 677; Sewell v. Detroit United Railway, 158 Mich. 407, 123 N.W. 2; Gerstler v. Weinberg, 160 Mich. 267, 125 N.W. 1; Congdon v. [Detroit], Jackson & Chicago Ry. Co., 179 Mich. 175, 146 N.W. 118; Bayer v. Grocholski, 196 Mich. 325, 162 N.W. 1030." (Italics ours).

Probably the latest pertinent decision of the Supreme Court of Michigan is Hazen v. Rockefeller, 303 Mich. 536, 6 N.W.2d 770, 774, decided November 25, 1942, from which we quote, to wit:

"The burden was on plaintiff to establish, by competent evidence, that defendant was negligent, and also to establish a direct connection between such negligence and his injuries. Nylund v. Gemo, 295 Mich. 75, 294 N.W. 104. Negligence will not be presumed. Schultz v. Sollitt Construction Co., 296 Mich. 125, 295 N.W. 585. The mere fact that an accident happened resulting in plaintiff's injuries does not establish defendant's negligence.

Burghardt v. Detroit United Railway, 206 Mich. 545, 173 N.W. 360, 5 A.L.R. 1333. The rule of res ipsa loquitur is not followed in this State. Weissert v. City of Escanaba, 298 Mich. 443, 299 N.W. 139. In the case of In re Estate of Miller, 300 Mich. 703, 2 N.W.2d 888, 891, we quoted, with approval, the following statement by Mr. Justice Butzel in Poundstone v. Niles Creamery, 293 Mich. 455, 459, 460, 292 N. W. 367:

" 'Proof of an accident and resulting injury is not alone sufficient to establish defendant's responsibility, but the fact that an accident happened may be considered along with proof of the other circumstances to determine whether negligence existed. Manley v. Potts, 286 Mich. 671, 282 N.W. 862, and cases there cited. See, also, Elsey v. J. L. Hudson Co., 189 Mich. 135, 155 N. W. 377, L.R.A.1916B, 1284. Negligence may be proved by circumstantial evidence. Wilkins v. Bradford, 247 Mich. 157, 225 N.W. 609. There must be substantial evidence which forms a reasonable basis for the inference of negligence. Frye v. City of Detroit, 256 Mich. 466, 239 N.W. 886. There must be more than a mere possibility that unreasonable conduct of the defendant caused the injury. We cannot permit the jury to guess, although legitimate inferences may be drawn from established facts. Heppenstall Steel Co. v. Railway Co., 242 Mich. 464, 219 N.W. 717.' "

■ We think that the directed verdict was proper. We need not consider the rule of res ipsa loquitur because it is not accepted in the courts of Michigan.

Before appellant was entitled to have his case submitted to the jury, he was required to introduce substantial proof tending to show that some negligence of appellee was the proximate cause of his injuries. Our conclusion is that no such proof, direct or circumstantial, is found in the record. As above indicated, there is an inference that the lamp fell because the chain was not attached to the hook, but there is no evidence, if such condition existed, that appellee was responsible therefor.

Drury enumerated a number of factors that might, singly or combined, have caused the lamp to fall, but he was frank to say that "I cannot tell what it was that produced the falling of the lamp. If I attempted to do so I would have to speculate, taking into consideration all the various factors that I have enumerated to you." Among the factors enumerated were snow, frost, moisture, ice, sand and grease.

■ There is testimony tending to show that there were earth vibrations (of which appellee was aware) caused by the operation of a drop forge hammer in an adjoining plant about 200 feet away. It is said that these vibrations could have caused the lamp to fall. This is no more than surmise. The vibrations might have disengaged the latch-dog but it cannot be concluded by any process of legitimate reasoning that they could have shaken the ring from the hook when the door was closed.

It is also suggested that the door to the box was opened by a marauder or intruder. There is no evidence that it was and there can be no worthwhile inference to that effect because Nash had protected its plant from sabotage by a manproof fence and by an organized force of patrolmen of which appellant was a member.

These speculations are interesting, but they, in no way, point to negligence on the part of appellee. Before a court may submit to a jury the question of whether an act is negligent there must be at least some substantial evidence of what the act is. Although appellant was seriously injured, his difficulty is, that the case as presented has no substantial support in the evidence and rests wholly upon surmise, speculation and conjecture; but this is not sufficient under Michigan law.

The judgment appealed from is affirmed.