## AUGUST BARNOWSKY, ADMINISTRATOR, ETC., v. RICHARD HELSON.

*Negligence—Presumption—Falling of structure—Evidence.*

In a negligence case to recover for the death of plaintiff's decedent, caused by the falling of the roof of a building which the defendant was raising, evidence on the part of the plaintiff that the roof suddenly gave way, slipped or tipped to one side, and fell, raises the presumption that it fell because not sufficiently braced or stayed; and in the absence of any showing by the defendant *why* the roof fell, or of negligence on the part of the deceased, the case should be submitted to the jury on the plaintiff's proofs.

Error to Wayne. (Reilly, J.) Argued October 28, 1891. Decided December 30, 1891.

| | |
|---|---|
| 89 | 523 |
| 113 | 589 |
| 89 | 523 |
| 125 | 530 |
| 89 | 523 |
| s50NW | 989 |
| 129 | 606 |
| 129 | 684 |
| 89 | 523 |
| 148 | 240 |
| 89 | 523 |
| 158 | 407n |

Negligence case. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*George X. M. Collier,* for appellant:

1. Counsel cited, in support of the doctrine of the opinion, *Mulcairns v. Janesville,* 67 Wis. 24; *Kearney v. Railway Co.,* L. R. 5 Q. B. 411; *Mullen v. St. John,* 57 N. Y. 567; *Vincett v. Cook,* 4 Hun, 318; *Railroad Co. v. Rainbolt,* 99 Ind. 551; *Wilkinson v. Steel Works,* 73 Mich. 405.

*James H. Pound,* for defendant, contended:

1. A verdict was properly directed for the defendant upon each one of the following grounds:

*a*—No *prima facie* case of negligence in the defendant or his employés is shown, or any contract duty in him to brace the roof at all.

*b*—The work of the intestate was undirected and voluntary, something he set himself at; and, for ought we know, had he asked his foreman for directions, he would have been set at something else.

*c*—Plaintiff's intestate was engaged in a very risky and dangerous business, patent to every one, and the risk of his business included the casualty by which his life was terminated; citing *Clarke v. Holmes,* 7 Hurl. & N. 937; *Gibson v. Railway Co.,* 63 N. Y. 449; Deering, Neg. § 196, note 4.

*d*—Chapaton, Helson, and Kaiser were engaged in one common employment, to attain a common object, all at the one time, so, the work being apparently dangerous, the doctrine of fellow-servant's negligence applies with full force in this case; citing Deering, Neg. § 196, note 2.

*e*—In any event, if the evidence in this case should tend to hold anybody, it is not defendant, but Kaiser, who had taken a contract to raise the roof himself, without assistance. His control over the raising was full, complete, and absolute. As he himself says, he was dominated in reference thereto by no one, but controlled the work himself absolutely; and, if that state of facts does not invite the doctrine of independent contractor, I apprehend it would be hard to conceive one that does.

MORSE, J. In this case the falling of the roof was in and of itself some evidence that the work of raising it was not being done with the ordinary care and skill. It

is true that the mere fact of an injury does not impute negligence on the part of any one, but, where a thing happens which would not ordinarily have occurred if due care had been used, the fact of such happening raises a presumption of negligence in some one. For instance, if the wall of a building falls down, and injures a person. walking along the street or standing beside the building, the clear presumption is that the building was either negligently built, or that it was not kept in a reasonably safe condition after it was erected, since buildings properly constructed do not ordinarily fall of their own weight. In the present case it must be apparent, and within the knowledge of every one, that a roof of this kind could be raised safely, and without falling, if such raising were done with proper care and caution, and by one having the necessary skill and experience to manage the work.

There was no negligence shown on the part of plaintiff's intestate. He in no manner caused or contributed to the injury. The falling of this roof cannot be considered a mere accident for which Providence alone is responsible. The fact that some of the witnesses do not know what caused it to fall has no bearing upon the issue, except that they were ignorant of the cause of the disaster. One witness, Henry Vincent, testifies on direct examination:

"*Q.* What was the cause of that roof going down?
"*A.* Because it was not properly braced.
"*Q.* If it had been properly braced, would it have fallen?
"*A.* I think not.
"*Q.* Now, why was it not properly braced? Whose business was it to do it?
"*A.* The carpenters', I think; they done all the bracing there.
"*Q.* What do you mean by properly braced?
"*A.* It was not braced right; there was not braces enough.

"*Q.* Could it have been braced sufficiently to keep it in a perfect position?

"*A.* Yes, I think it could.

"*Q.* Don't you know that it could?

"*A.* They did not throw the next one down, and I think they would not have thrown this one down if they had worked it the way they did the second one."

On cross-examination he further says:

"*Q.* Now you say that all you noticed was four braces of 2x4?

"*A.* On each side.

"*Q.* And two ropes?

"*A.* Yes, sir.

"*Q.* You knew that it was clearly insufficient?

"*A.* I did not know anything about it. I don't know whether it was enough or not. I never worked under a roof being raised in that shape.

"*Q.* So that you do not pretend to know whether or not it was sufficient or insufficient?

"*A.* I know that if it had been braced more it would not have fallen.

"*Q.* I mean except by the result.

"*A.* That is all,—by the result."

This is what any one would say at once upon reading this record,—that the *result* shows that the roof was not properly braced; that the fact of this falling of the roof, taken in connection with the manner of raising it, shows presumptively that it fell because it was not properly braced; and there the mind would naturally rest, until some evidence was produced showing that it fell from some other cause or agency. This roof not properly supported would fall as a natural result of the laws of gravitation, but if properly braced there would be no reason for its falling from that cause, and it would not fall from any other cause without the interposition of the elements or some human agency. Therefore, without any other showing than that it suddenly gave way, slipped or tipped to one side, and fell, the presumption is almost conclusive that it fell because it was not suffi-

·ciently braced or stayed. The defendant made no showing to explain why it fell, and the case should have been submitted upon the plaintiff's proof.

" Negligence, like any other fact, may be inferred from the circumstances, and the case may be such that, though there be no positive proof that defendant has been guilty ·of any neglect of duty, the inference of negligence would be irresistible." *Alpern v. Churchill,* 53 Mich. 607, 613; *Crosby v. Railway Co.,* 58 Id. 458; Bish. Non-Cont. Law, § 443.

Mr. Helson was responsible, if any one can be held liable, for the falling of this roof. While Mr. Kaiser took the job of raising the roof, the testimony shows that the timber bracing of the roof while it was being raised was to be done, and was done, by Helson through the direction of his foreman, Mr. Myers.

The judgment is reversed, and a new trial granted.

CHAMPLIN, C. J., McGRATH and LONG, JJ., concurred with MORSE, J.

GRANT, J. *(dissenting).* H. P. Baldwin & Co., of Detroit, owned two adjoining buildings, covered by flat roofs, which did not conform to each other. They adopted plans for a change, which made it necessary to lower the rear part of one roof, and to raise the front. A similar change was also made in the other building. They let two contracts,—one for the mason work, the other for the carpenter work. One Chapaton took the former, and the defendant took the latter. ·Chapaton's contract required him to remove the center brick wall, and to raise the outside walls to correspond to the roofs when placed in their new positions. The back part of the roof which fell and killed plaintiff's intestate had been lowered to its proper position, and 30 to 40 feet of the wall finished underneath it. As fast as the roof was raised, the wall was erected to support

it. At the time of the accident the front was being raised by means of jack-screws, placed upon boxes made for that purpose. For some reason the roof swayed, and fell upon the deceased, who was at work upon the center wall. The defendant, being unfamiliar with the work of raising roofs, employed one Kaiser, who had had long experience therein. Kaiser employed his own men, and had the entire control and direction of that work. The allegation of negligence is that the defendant failed to furnish braces and stays of sufficient size and strength to bear the necessary strain which might be brought to bear upon them to keep the roof in its proper position. At the close of the plaintiff's evidence the court directed a verdict for the defendant, upon the ground that no case of negligence was made by the proofs. A statement of all the evidence upon this point is therefore necessary to determine whether the charge was correct.

The first witness was Henry Vincent, a brick-layer, who had had no experience in the business of raising roofs. He testified that when the roof was being lifted, in order to keep it from coming over or oscillating, they fastened two ropes near the front of the roof, and, carrying them cross-wise, fastened them to the building below; and that two braces on each side of the building, consisting of timbers, 2x4, were nailed to the top of the joists and down to the floor. On being asked the cause of the fall, he answered·

"Because the roof was not properly braced. If it had been properly braced, I do not think it would have fallen."

On cross-examination he testified:

"I don't know anything about the sufficiency of the braces. I don't know whether it was enough or not."

He further said his opinion was based upon the result. The next witness was Kaiser, who took the contract to

raise the roof. He testified to his contract with the defendant, and, on being asked by plaintiff's counsel what made the roof fall, answered, "I don't know." The following question was also asked:

"Do you know what the condition of the bracing was at the time it fell?
"*A.* I do; yes, sir."

Plaintiff's counsel did not pursue this inquiry further, nor make any attempt to show by the witness what its condition was. On cross-examination he testified that Chapaton's men were at work pinning or tying the roof down in addition to the braces, jacks, and pump boxes. He describes the operation as follows:

"We lowered the back part down, and the front was to be raised. We lowered the back part to the right position, somewhere in the neighborhood of 40 feet from the rear, and then they put on the braces. And then those ropes were put from the upper corner to the lower part, and fastened with a heavy iron buckle, while the back part was stationary on the brick wall and on the braces."

He further testified that in his judgment the roof was safely and properly braced, and that he was there under it when it fell.

The next was one Bolkier, a carpenter. On being asked what made the roof fall, he replied: "It was not enough braced, I guess." He saw a couple of screws that were crooked, and did not stand plumb, and told Mr. Myers, defendant's foreman. He testified that the men who handled the jack-screws, upon going to work in the morning, knocked out some braces that were put on the night before for fear of wind.

One Rudolph Hecker worked for Mr. Kaiser, and on his direct examination testified only that it was the duty

89 Mich—34.

of the carpenters to brace the roof. Upon cross-examination he said he thought it was perfectly safe.

One Patke, employed by Kaiser, was called to prove that it was the duty of the carpenters to do the bracing, and was then asked what made the roof fall, to which he replied, "I don't know." On cross-examination he said he had been at work for Kaiser for over five years, and that they were raising this roof in a careful way.

One Kraull, also one of Kaiser's men, had been working in this business for Kaiser for five years, said he understood the business, and could give no reason why the roof fell.

The above is all the evidence bearing upon the question of the negligence of the defendant. It all comes from the plaintiff's own witnesses. Vincent was incompetent to testify to his opinion for lack of the necessary experience and knowledge, and for the further reason that he based his opinion entirely upon the fact that the accident happened. Bolkier only "guessed" why it fell. He, too, was not shown to possess the experience and knowledge necessary to make his opinion as an expert competent. All plaintiff's other witnesses are unable to account for the accident. There is therefore nothing in the case upon which the jury would have been justified in finding a verdict for plaintiff, except the fact that the roof fell. This fact alone, under the repeated decisions of this Court, is no evidence of negligence. *Quincy Mining Co. v. Kitts,* 42 Mich. 34; *Grand Rapids & Indiana R. R. Co. v. Huntley,* 38 Id. 537; *Early v. Railway Co.,* 66 Id. 349.

The defendant employed a man of skill and experience to do the work, and in this respect fully performed his duty. Whether this man was an independent contractor it is unnecessary to determine. Kaiser and his employés,

all men of experience in the business, the deceased, and other men were working under this roof. They all saw how the work was being done, and how the roof was braced. No one of them thought of or questioned the sufficiency of the braces, or anticipated any danger. I can see no reason in visiting the consequences of this unfortunate accident upon the defendant, nor in permitting the jury to infer negligence upon his part from the mere fact of the fall of the roof.

I think the instructions of the court were correct, and that the judgment should be affirmed.