INDIANA LUMBERMENS MUTUAL INSURANCE COMPANY
*v.*
MATTHEW STORES, INC.

1. APPEAL AND ERROR—MOTION FOR JUDGMENT—EVIDENCE.

Testimony introduced by plaintiffs must be construed as strongly as reasonably possible in their favor on appeal from judgment for defendant on motion made at the close of plaintiffs' proofs.

2. NEGLIGENCE—MOTION FOR JUDGMENT—EVIDENCE—DAMAGES TO BUILDING BY TRUCK—ICY PAVEMENT.

Plaintiff insurers, subrogees of owners of building damaged by defendant's truck which had failed to stop on icy pavement *held,* entitled to have case submitted for trial on the merits, under evidence presented and without reference to the doctrine or principle of *res ipsa loquitur,* hence, trial judge was in error in granting motion for judgment at the close of plaintiffs' proofs.

3. WORDS AND PHRASES—RES IPSA LOQUITUR—NEGLIGENCE.

The word *"res"* in the term *"res ipsa loquitur"* is deemed to mean the accident and injury on which the plaintiff in a negligence case bases his right to recover damages and, by implication, the rule, or principle, may not be regarded as referring to facts and circumstances surrounding the origin of the cause of action, as admitted or as established by proofs.

4. NEGLIGENCE—RES IPSA LOQUITUR.

The rule, or principle, *"res ipsa loquitur,"* consistently interpreted in this State as meaning that the mere fact that an accident has occurred in which personal injuries, or property damage, were sustained is not evidence of negligence has not been adopted in this State.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 3 Am Jur, Appeal and Error § 945.
[2–4] 38 Am Jur, Negligence § 295 *et seq.*
[5] 38 Am Jur, Negligence § 333.
[6] 38 Am Jur, Negligence § 332.

5. SAME—CIRCUMSTANTIAL EVIDENCE.
   Negligence may be established by circumstantial evidence.

6. SAME—PRIMA FACIE CASE—EVIDENCE.
   A prima facie case of negligence is made out where the circumstances are such as to take a case out of the realm of conjecture and within the field of legitimate inferences from established facts.

Appeal from Clinton; Cash (Paul R.), J. Submitted October 10, 1956. (Docket No. 85, Calendar No. 46,866.) Decided September 4, 1957.

Case by Indiana Lumbermens Mutual Insurance Company, a foreign corporation, and Michigan Millers Mutual Fire Insurance Company, a Michigan corporation, subrogees of Dorr and Margaret Anderson, doing business as Andy's Shopping Basket, against Matthew Stores, Incorporated, a Michigan corporation, for damages resulting when delivery truck struck building. Judgment for defendant. Plaintiffs appeal. Reversed and remanded.

*Reagh, Warren & Denfield (George H. Denfield, II,* of counsel), for plaintiffs.

*Timothy M. Green,* for defendant.

SMITH, J. (*concurring*). This case involves a collision between an ice cream truck and a supermarket. The plaintiffs are the subrogees of Dorr and Margaret Anderson, the owners of the supermarket, known as Andy's Shopping Basket. We will refer to them as though they were the store owners. The defendant's business, as far as pertinent to this litigation, involves the ownership of an ice cream truck and its operation by one Oral Good. The defendant's truck crashed into and partially through the front of the plaintiffs' store, causing considerable damage, and this litigation seeks reimbursement.

The market is located on US-27 at the westerly limits of the city of St. Johns at a point where North Clinton avenue intersects the highway. Most of the area immediately around the store is paved with asphalt and at the point where the accident occurred there is a sidewalk about 10 feet wide, raised 3 inches above the asphalt and extending along the side of the building. On the day in question, Oral Good, defendant's employee, "turned off from North Clinton avenue and drove directly to the store." Dorr Anderson was standing inside the market with Mr. Harper, a salesman, at about 9:15 a.m. Mrs. Wilma Bensinger and another employee of the market were also at work inside. At this moment they "heard a terrific crash, sounded like the roof fell in." When the parties recovered their composure, they discovered that the Matthews' ice cream truck "was partially in the building." Mr. Good, the driver, came into the store and talked with Dorr Anderson, who related the conversation to the court:

"Well, he was in quite a high state of upset or excitement I would say, and he said that he wasn't driving too fast, that he thought he was going to stop, and he felt he certainly would stop when he hit the building, he didn't expect the building to cave in."

The plaintiffs' declaration charged that the driver "approached said building in a negligent, careless and reckless manner, striking the northeast corner of said building, greatly damaging the same," alleged specific duties on the part of the driver, and asserted that "notwithstanding" such duties the defendant's agent drove in the careless, et cetera, manner described and damaged the building. The defendant denied the driving so charged and described, and asserted "that any accident which may have caused injury to the subrogor's building was not

caused through any act of negligence on the part of this defendant or its servant, but by an act of God, the asphalt pavement around said subrogee's premises having become covered the night before by an icy condition of which this defendant's agent had no knowledge and could not see." At the close of the plaintiffs' proofs the defendant moved for a judgment of no cause for action. This the trial court granted on the ground that there were "missing links" in the proofs. Motion for new trial having been made and denied, plaintiffs are before us on a general appeal.

Our problem here is the proof of negligence by circumstantial evidence.[*]

At the one extreme, it is clear that the happening of an accident alone is not evidence of negligence. Something more must be shown than the mere happening. At the other extreme, it is clear that we do not require direct evidence to establish each of the issues in a negligence case. In fact it is an unusual case where none of the issues confronting the jury (including duty, breach, and causal connection) is established, at least in part, by a process of inference from relevant and established facts. To the degree that we employ such a process of inference we are using circumstantial evidence. We do it constantly. The law would be paralyzed without it.

But we said that the mere happening of an accident, standing alone, is not evidence of negligence. Where, then, do we draw the line? We will start with the case of *Alpern* v. *Churchill,* 53 Mich 607. It cast a long shadow. Mrs. Alpern, the plaintiff, complained of the destruction by fire of certain buildings and alleged that the fire was caused by sparks from defendants' refuse burner, located nearby. Defendants conceded that, "Prima facie,

---

[*] See Prosser, Law of Torts (2d ed 1955), § 42; 2 Harper and James, The Law of Torts (1956), §§ 19.3, 19.4.

the plaintiff has made out a case to show that this fire did originate from the sparks from the burner of the defendants," but by the court's instruction "the case was made to turn upon the question whether there was any evidence tending to show negligence in the defendants in the use of an imperfect or insufficient spark-catcher." The jury was instructed to find for defendants. In reversing, Mr. Justice Cooley wrote as follows for a unanimous court (pp 612, 613):

"Proof that the injury probably resulted from sparks emitted from the burner was ample, but the judge was of opinion that this was insufficient to establish a liability unless there was some affirmative showing of negligence, beyond what might be inferred from the injury itself. And this as a general principle is no doubt true; the party counting upon negligence must adduce affirmative proof of it. *Lake Shore & Michigan Southern R. Co.* v. *Miller*, 25 Mich 274; *Macomber* v. *Nichols*, 34 Mich 212 (22 Am Rep 522); *Grand Rapids & Indiana R. Co.* v. *Judson*, 34 Mich 506; *Brown* v. *Congress & Baker Street Railway Co.*, 49 Mich 153 (4 Am Neg Cas 32). But we are not satisfied that there was in this case such an absence of evidence as the judge supposed. Negligence, like any other fact, may be inferred from the circumstances; and the case may be such that, though there be no positive proof that defendant has been guilty of any neglect of duty, the inference of negligence would be irresistible."

Some 30 years later we decided the case of *Maki* v. *Isle Royale Copper Co.*, 180 Mich 624. This involved a personal injury. Plaintiff, working in defendant's mine, was struck by a falling bucket. The bail of this bucket was attached to a chain which, in turn, was attached to the hook of the "lower block" by a double knot in the chain. "There was testimony," states the opinion (p 626), "to show that, if

a chain were knotted in the way this chain was, it should also be bolted in order to be reasonably safe." Was there a bolt there? The defendant insisted, as to this, that the record was absolutely blank. The trial court directed a verdict for defendant. In reversing, we held as follows (pp 630–632):

"It is true that there is *no positive direct testimony* that there was no bolt in the knot at the time of the accident, but, having in mind the well-established rule that, in directing a verdict for the defendant, the facts in the case should be viewed most favorably to the plaintiff, can it be said that a reasonable inference cannot be drawn that the bucket fell because of the failure to furnish the knot with the necessary bolt? In this State, defendant's negligence cannot be presumed and must be proven, but we think the reasoning of this Court in *Schoepper* v. *Hancock Chemical Co.*, 113 Mich 582, 586, 589, is applicable to the instant case. Justice Montgomery, speaking for the Court, said:

" 'Defendant's counsel contend that the cause of this explosion is a matter of mere conjecture, and it is said by counsel that it is not enough for plaintiff to prove circumstances consistent with her theory, but that these circumstances, and each of them, must preclude any other rational conclusion. This we take to be but another way of stating the proposition that the proof must exclude all reasonable doubt. It is hardly necessary to say that no such rule obtains in civil cases. It is true that where an injury occurs that cannot be accounted for, and where the occasion of it rests wholly in conjecture, the case may fail for want of proof. *Robinson* v. *Charles Wright & Co.*, 94 Mich 283; *Redmond* v. *Delta Lumber Co.*, 96 Mich 545. But such cases are rare, and that rule should never be so extended as to result in a failure of justice, or in denying an injured person a right of action where there is room for balancing the probabilities and for drawing reasonable inferences better supported upon one side than the other. In this case

there was no direct proof of any other probable producing cause of the explosion than such as was offered by the plaintiff. * * * Negligence, like any other fact, may be inferred from circumstances. *Alpern* v. *Churchill,* 53 Mich 607, 613; *Barnowsky* v. *Helson,* 89 Mich 523 (15 LRA 33). And, though the proof of plaintiff depended upon inference to establish the main fact, the question of whether the inference suggested by the plaintiff's theory is the correct one, or whether it was sufficiently rebutted, was for the jury. *Crosby* v. *Detroit G. H. & M. R. Co.,* 58 Mich 458; *Hagan* v. *Chicago, Detroit & G. T. R. Co.,* 86 Mich 615; *Woods* v. *Chicago & G. T. R. Co.,* 108 Mich 396. The judgment will be reversed, and a new trial ordered.'

"See, also, *La Fernier* v. *Soo River Lighter & Wrecking Co.,* 129 Mich 596; *Mirabile* v. *Murphy Co.,* 169 Mich 522; *Maki* v. *Mohawk Mining Co.,* 176 Mich 497.

"We have, in the instant case, the testimony above set forth and the physical fact that the bucket fell while it was empty and suspended upon the chain without being subjected to any unusual strain or jar. We are of the opinion that a reasonable inference supporting the plaintiff's theory of the case might properly be drawn by a jury, and that this question should have been submitted to the jury." (Emphasis ours.)

We will discuss one additional case, *Heppenstall Steel Co.* v. *Wabash R. Co.,* 242 Mich 464. In this case a spur track extended from defendant's switching tracks into plaintiff's plant. The opening (into plaintiff's building) for railroad cars was protected by a steel curtain. During the night 3 cars "crashed through the steel curtain, entered plaintiff's building, and went through it and demolished a portion of the east wall. No witness saw the happening." The defendant argued that there was no testimony upon which to base a finding of negligence. It argued that the accident might, for instance, have oc-

curred because, while being switched upon this spur track, the cars might have broken loose from their string due to faulty couplers, of which fault defendant had no notice. In short, that "plaintiff's case rests solely on speculation and conjecture." The opinion of Mr. Justice Fellows, in affirming judgment for the plaintiff, held, in part, as follows (p 468):

"This Court has uniformly held that cases may be made by circumstantial evidence. This is not the adoption of the rule *res ipsa loquitur,* a rule not favored by this Court. It has always been the rule of this jurisdiction that the jury should be permitted to draw legitimate inferences from the established facts. So to do is an entirely different thing than to permit the jury to speculate or guess what the facts are. * * *

"It was a legitimate inference to be drawn from the established facts that defendants' employees sent the cars into this siding with such force that they crashed through a steel curtain, over 2 high bumpers near the end of 130 feet of track running through the building and through a brick wall."

The opinion of Mr. Justice Montgomery, speaking for the unanimous Court in *Sewell* v. *Detroit United Railway,* 158 Mich 407, 409, is also in point:

"It is the settled rule of this State that negligence of the defendant must be proved, and that an inference of negligence is not to be drawn from the mere fact of an accident. But it has also been held in numerous cases that the circumstances attending an injury may be such as to justify an inference of negligence. As in the present case, if all that appeared had been that the plaintiff was riding in a car of the defendant under the control of its servants, and the car in which plaintiff was riding continued its course until it collided with another car ahead of it standing still, with sufficient force to push the still car ahead 75 feet, the inference that some-

one had blundered prima facie would be the most natural one to be drawn, and that inference is so clear that it would not require further proof of negligence on the part of the defendant."

We will not discuss additional authority, though it is ample.* From the above cases it is clear that, as succinctly stated in *Barnowsky* v. *Helson*, 89 Mich 523, 525 (15 LRA 33), "Where a thing happens which would not ordinarily have occurred if due care had been used, the fact of such happening raises a presumption of negligence in someone." Here we are speaking of presumptions. We are stating a rule of circumstantial evidence. What we have held, put in other terms, is that "where the circumstances are such as to take the case out of the realm of conjecture and within the field of legitimate inferences from established facts that at least a prima facie case is made." *Burghardt* v. *Detroit United Railway*, 206 Mich 545, 547 (5 ALR 1333), per FELLOWS, J. In other words, when the facts proved point to negligence, we will not remain wilfully blind, refusing to see what is clear to everyone else. Courts and juries, just as pedestrians, will be held to see what is plain to be seen, or, more accurately, what there is a duty to see.

The difficulty in many cases, strikingly illustrated in the case at bar, is the mistaken notion that the plaintiffs' proofs must be so specific as to negative any hypothesis of nonliability that the defendant may conjure up, however ingenious it may be. Thus in the *Maki Case, supra,* that some evilly-intentioned

---

* See *Barnowsky* v. *Helson, supra; Bayer* v. *Grocholski,* 196 Mich 325; *Burghardt* v. *Detroit United Railway, supra; Fuller* v. *Magatti,* 231 Mich 213; *Howe* v. *Michigan Central R. Co.,* 236 Mich 577; *Heppenstall Steel Co.* v. *Wabash R. Co., supra; Wilkins* v. *Bradford,* 247 Mich 157; *Durfey* v. *Milligan,* 265 Mich 97; *School District of the City of Ionia, for use and benefit of Employers' Liability Assurance Co., v. Dadd,* 308 Mich 220; *Pattinson* v. *Coca-Cola Bottling Co. of Port Huron,* 333 Mich 253; *Spiers* v. *Martin,* 336 Mich 613; *Soltar* v. *Anderson,* 340 Mich 242.

or stupid third person, someone for whose acts defendant was not responsible, had in some entirely unexplained way gained access to the machinery and removed the critical bolt; or, that in the *Heppenstall Steel Case,* some unexplained and unanticipated defect in the couplers had loosed the 3 cars which crashed into plaintiff's building; or, that in the case at bar, defendant's truck had through some defect, of which defendant had had no warning, or no reasonable opportunity to learn, lost all braking power, *i.e.,* "He might have had hydraulic brakes and put his foot down and the fluid had all gone out of them and he was surprised that he couldn't stop."

Plaintiffs' burden is not so extreme. There may, it is true, be a number of conceivable explanations for an accident. Thus in the case at bar the driver may have been inexcusably inattentive as he approached the building and applied his brakes too late; he may simply have been going too fast to stop; he may have applied his brakes within what would normally have been good stopping distance, but skidded on the ice which was prevalent in the area and which he should have seen and made allowances for; or he may, through some totally inexplicable mechanical failure, have lost all power to brake between his last application of the brakes and the plaintiffs' store. On the probabilities, where is the balance? Does it incline to negligence, inattentiveness, speed, lack of allowance for prevalent ice? Or does it incline to a wholly unanticipated loss of braking power, to a mysterious meddling stranger (in the *Maki Case*), or to (in *Heppenstall Steel*) car couplers suddenly and inexplicably at fault on plaintiff's spur track? True, these things could happen. But no plaintiff need negative them to reach the jury, or the court. It is enough that plaintiff, as we gather from *Maki v. Isle Royale Copper Co., supra,* prove circumstances consistent with his theory. To repeat, as we there

held (p 631), it is not required "that these circumstances, and each of them, must preclude any other rational conclusion. This we take to be but another way of stating the proposition that the proof must exclude all reasonable doubt. It is hardly necessary to say. that no such rule obtains in civil cases." A right of action, we again repeat, should never be denied an injured person "where there is room for balancing the probabilities and for drawing reasonable inferences better supported upon one side than the other."

What is the balance of probabilities in the case before us? What are the reasonable inferences? In short, what proof of circumstances was here made? In passing upon the court's ruling we consider the evidence in the light most favorable to plaintiff and give him the benefit of all legitimate and favorable inferences. *Fisher* v. *Grand Trunk Western R. Co.,* 306 Mich 95.

It is admitted in the pleadings that on January 25, 1954, Oral Good was operating the defendant's ice cream truck in the course of his employment and in the immediate vicinity of the market. The testimony discloses that about 9:15 a.m. on such date there was a "terrific crash" and defendant's truck was found to have entered "into the side of the building." The driver, Good, was "In quite a high state of * * * excitement; * * * he said that he wasn't driving too fast, that he thought he was going to stop, and he felt he certainly would stop when he hit the building, he didn't expect the building to cave in." On the day in question "it was freezing weather. There was ice all over town." It was also testified that "there was a slippery condition right there at the northeast corner of the building" (the point of impact) extending to "within 2 or 3 feet of the building." (We note that none of the other 4 people in the building crashed into the building while parking

there that morning.)   According to the witnesses "driving was precarious" at that time, but the visibility was "O.K.  It was good."   The driver, Good, had been delivering to the store "for a long time," making "trips at least 3 times a week."   His route from the street to the store was "very familiar."   He would turn from North Clinton avenue into the market property and proceed the 250 to 300 feet to the northeast corner of the building.  It was under these circumstances that he crashed into the building.

In previous cases involving analogous fact situations we have consistently held that at least a question of fact was presented by such circumstances. *Alpern* v. *Churchill, supra,* and other cases hereinbefore cited.  So hold we here.  Plaintiffs' testimony, together with legitimate inferences therefrom, presented questions of fact for proper determination.

We have thus reached decision without reliance upon the Latin phrase *"res ipsa loquitur."*  ("If that phrase had not been in Latin, nobody would have called it a principle."  Lord Shaw in *Ballard* v. *North British R. Co.,* [1923] Sess Cas, HL (Scot) 43, 56; Prosser on Torts, § 42, p 201, note.)   We are aware, of course, of how often we have stated that in this jurisdiction we do not employ the principle. (See observations of Black, J., in *Higdon* v. *Carlebach,* 348 Mich 363, 374, 375, quoting, also, Dean King of the Detroit College of Law, to the effect that "The Supreme Court continues to say that the doctrine of *res ipsa loquitur* does not apply in Michigan and then proceeds to apply it.")   We are likewise aware of such cases as *Pattinson* v. *Coca-Cola Bottling Company of Port Huron,* 333 Mich 253, in which we approved the award of damages in a case involving an exploding soft-drink bottle, a situation in which courts even professing to apply *res ipsa loquitur* have denied recovery on similar facts.  *Loebig's Guardian* v. *Coca-Cola Bottling Co.,* 259 Ky 124 (81

SW2d 910). It is time to attempt some clarification of our position with respect to this so-called "doctrine" or "principle."

As noted above, Dean King says we do apply the doctrine of *res ipsa loquitur*. Justice CARR feels otherwise. "This Court," he says, "has never approved the *res ipsa loquitur* rule." *Higdon v. Carlebach, supra,* 378. Which is right? The real difficulty here lies in an embarrassment of riches. Both may be right. For the term *res ipsa loquitur* has no fixed meaning. Its meaning varies not only from jurisdiction to jurisdiction but it is not always consistently applied even within a single jurisdiction. Bond's article, "The Use of the Phrase Res Ipsa Loquitur" (66 Central L J 386), expresses one of the causes of our difficulties in these terms:

"One of the commonest of intellectual frailties is the inability of men to continue to receive from a word or phrase its original, exact signification. A statement of an idea, however exact and clear it may have been originally, is commonly soon diverted or distorted by inaccurate conceptions, and, as it becomes more familiar or proverbial, tends to become a password for any idea it may suggest. This is true especially of colloquial expressions, but it is also true of any words which may be familiarly repeated to express an idea. To this same frailty is due the fact that a large part of the work of lawyers is that of defining old rules of law.

"The Latin expression *res ipsa loquitur,* frequently made use of nowadays in the law of negligence, has had a career in the law which illustrates this tendency. It is a simple statement of the logical effect of evidence in the light of ordinary experience, yet judges in many States have found it necessary, of late years, to devote pages of reports to defining the expression, and the rule it had been used to express; and still it is cited and applied in a manner which shows misconception of it."

The resulting current chaos with respect to the use of the phrase is well described by Dean Prosser in his careful study published in 20 Minn L Rev 241, 270, 271:

" "It is used in different senses, to denote evidence of different strength; it means inference, it means presumption, it means no one thing—in short it means nothing. Perhaps its most unfortunate result is to suggest that it is something separate and apart from ordinary circumstantial evidence, and that if the technical requirements for a *res ipsa* case cannot be met, negligence cannot be inferred. The phrase means nothing more than 'the thing speaks for itself.' Why not say so instead? Along with *res gestae* and other unhappy catchwords, the Latin tag should be consigned to the legal dustbin.

" 'It adds nothing to the law, has no meaning which is not more clearly expressed for us in English, and brings confusion to our legal discussions. It does not represent a doctrine, is not a legal maxim, and is not a rule.' "

Leaving the general problem and looking particularly at the situation in our own jurisdiction, there can be no doubt whatever that as the doctrine of *res ipsa loquitur* is defined by one of the great masters of our law, we do have it and we do apply it in this jurisdiction. For purposes of comparison we will quote on the subject, in parallel columns, Holmes, J., in *Graham* v. *Badger,* 164 Mass 42, 47 (41 NE 61), and Morse, J., in *Barnowsky* v. *Helson,* 89 Mich 523, 524, 525:

| Holmes, J. | Morse, J. |
|---|---|
| "*Res ipsa loquitur,*— which is merely a short way of saying that, so far as the court can see, the jury from their experience as men of the world may be warranted | "In this case the falling of the roof was in and of itself some evidence that the work of raising it was not being done with the ordinary care and skill. It is true |

in thinking that an accident of this particular kind commonly does not happen except in consequence of negligence, and that therefore there is a presumption of fact, in the absence of explanation or other evidence which the jury believe, that it happened in consequence of negligence in this case."

that the mere fact of an injury does not impute negligence on the part of anyone, but, where a thing happens which would not ordinarily have occurred if due care had been used, the fact of such happening raises a presumption of negligence in someone."

It is too late, in our opinion, to insist that *res ipsa loquitur,* as above defined (and this is a classic definition), does not apply in this State. Further than that we need not go, in fact we cannot. For, in order to answer the question whether *res ipsa* (generally, if we may use the expression) is applied in this State we must first inquire *whose* doctrine of *res ipsa?* The *res ipsa* of Justice Holmes and MORSE, or the *res ipsa* of Justice X? And having obtained this answer, what profiteth it us? Better, in our opinion, to admit frankly, with Dean Prosser (Torts, § 42, p 201, *supra*), that from various origins there has "developed an uncertain 'doctrine' of *res ipsa loquitur,* which has been the source of so much trouble to the courts that the use of the phrase itself has become a definite obstacle to any clear thought, and it might better be discarded entirely."

This much, however, is clear: The facts and circumstances attending an injury may be such as to take the case out of the realm of conjecture and to justify a legitimate inference from established facts. The primary difficulty in each case, on the substantive side, relates to the sufficiency, as a matter of proof, of the circumstantial evidence presented. But this problem is not unique to the negligence field. To it

no definite answer can be given. We are in the realm of what is known to our communities and our juries as "common sense" and we say this with full realization that the common sense of today may, tomorrow, be described as nothing more than a common delusion. But we try our case today and we must use today's experiences, not tomorrow's wisdom, or even yesterday's Latin, as our standard.

The order of the court denying motion for new trial is reversed and the case remanded for new trial. Costs to appellants.

EDWARDS and BLACK, JJ., concurred with SMITH, J.

CARR, J. The trial judge having entered judgment in favor of the defendant, on motion made at the close of plaintiffs' proofs, the testimony introduced by plaintiffs must be construed as strongly as reasonably proper in their favor. From facts alleged in the declaration and admitted in the answer, together with reasonable conclusions that may be drawn from the proofs, it appears that defendant's truck, operated by its employee in the course of his employment, ran into and damaged a building protected by plaintiffs' policy, or policies, of insurance. The accident happened January 25, 1954, shortly after 9 o'clock in the morning. At the time the streets of the city generally and the approaches to the building in question were quite icy.

It was plaintiffs' claim that defendant's driver was operating its truck in a careless and negligent manner. The proofs of the plaintiffs, if accepted by the trier of the facts on the merits, were such as to justify inferences that the driver failed to observe with proper care the condition of the approach to the building, although the general condition existing on the highways that morning should have warned him of the necessity for so doing, and that under said

conditions he failed to have his vehicle under reasonable and proper control. The force with which he struck the building, indicated by the resulting damage, suggests that he was driving at an unsafe speed, particularly in view of his inability to control and direct the truck.

In a case of this nature the trier of the facts is entitled to draw reasonable and legitimate inferences from such facts as are admitted or established by proof. On the record before us plaintiffs were entitled to have the matters at issue submitted and determined at a trial on the merits. I agree with the conclusion reached by Mr. Justice Smith that the trial judge was in error in granting the motion at the conclusion of plaintiffs' proofs. I also concur in his view that the case may properly be determined without reference to the doctrine, or principle, of *res ipsa loquitur*. He has, however, undertaken to discuss said principle, expressing views with which I am not in accord. The matter was considered at some length in *Higdon* v. *Carlebach,* 348 Mich 363, and I adhere to the conclusions stated in my opinion in that case.

Opinions of courts and text writers are at variance with reference to the interpretation of the phrase in question. In consequence some measure of confusion has arisen with reference to the proper application thereof. In some cases the view apparently has been taken that the statement or rule ought not to be given significance in accord with its accepted translation. Without discussing such decisions in detail, it is apparent that in some instances the language employed in the opinions had reference to the particular facts involved, and that inferences of negligence were at least permissible under such facts in accordance with generally accepted principles of the law of evidence.

Regardless of the views expressed by courts in other States, the fact remains that this Court has adopted, and consistently adhered to, an interpretation of the meaning of *res ipsa loquitur*. The phrase may be defined as "the thing itself speaks." (New Century Dictionary.) With due regard to the translation from the Latin, it is apparent from numerous decisions of this Court that the word *"res"* is deemed to mean the accident and injury on which the plaintiff in a negligence case bases his right to recover damages. This involves the implied holding that the Latin statement of the rule, or principle, may not be regarded as referring to facts and circumstances surrounding the origin of the cause of action, as admitted or as established by proofs. If given any such enlarged scope the statement becomes merely a recognition of generally accepted rules of the law of evidence. Given such meaning it undoubtedly causes misunderstanding and confusion, and may not properly be regarded as a rule or principle in the proper sense of either term.

In *Burghardt* v. *Detroit United Railway*, 206 Mich 545 (5 ALR 1333), this Court, speaking through Mr. Justice Fellows, indicated its position in clear and concise language. It was there said (pp 546, 547):

"This Court has not adopted the rule *res ipsa loquitur;* we have uniformly held that the happening of the accident alone is not evidence of negligence; and we have as uniformly held that negligence may be established by circumstantial evidence, and that where the circumstances are such as to take the case out of the realm of conjecture and within the field of legitimate inferences from established facts that at least a prima facie case is made."

In support of the statement made a number of prior decisions were cited, and the position taken has been adhered to consistently since the decision in the *Burghardt Case*.

The language above quoted leaves no question as to the interpretation that this Court has placed on the phrase *res ipsa loquitur*. It means that the mere fact that an accident has occurred in which personal injuries, or property damage, were sustained is not "evidence of negligence." It may not be said that the interpretation of the phrase in question, heretofore observed by the courts and the legal profession of this State, is in any particular unreasonable or improper. It is based on an accurate and accepted translation of the Latin phrase. No reason appears for adopting a different interpretation at this time. Such change will have no tendency to promote the proper administration of justice in the trial of cases in court. On the other hand, any such change would result in misunderstanding and confusion.

DETHMERS, C. J., and SHARPE and KELLY, JJ., concurred with CARR, J.

VOELKER, J., took no part in the decision of this case.